# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **WILLIE D. JOHNSON,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }   Civil Action No.: 5:13-CV-01507-RDP |
| | } |
| **CAROLYN W. COLVIN,** | } |
| **Commissioner of Social Security,** | } |
| | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Willie D. Johnson brings this action pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Administrative Law Judge ("ALJ") denying his claim for Supplemental Security Income ("SSI").  *See also* 42 U.S.C. § 1383(c).  Based on the court's review of the record and briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.   PROCEEDINGS BELOW**

Plaintiff filed prior applications for Disability Insurance Benefits ("DIB") and SSI on September 26, 2005, alleging a disability onset date of December 3, 2005.[1]  (Tr. 52, 54). Plaintiff's claims were denied initially on December 29, 2005.  (Tr. 52).  On January 6, 2006, Plaintiff requested a hearing.  (Tr. 52).  Plaintiff's request was granted and a hearing was held before ALJ Randall C. Stout on July 19, 2007.  (Tr. 52).  After being denied benefits by the ALJ, Plaintiff filed a request for review.  (Tr. 59-60).  However, review of the ALJ's decision was denied by the Appeals Council on April 24, 2008.  (Tr. 12).  Plaintiff did not file an appeal and

---

[1] At the hearing before the ALJ, Plaintiff's onset date of disability was amended to January 9, 2005.  (Tr. 52).

there is no reason to further examine that prior decision. Thereafter, Plaintiff filed applications for DIB and SSI on July 16, 2009. (Tr. 12). These claims were denied at the initial level on October 19, 2009, and Plaintiff did not file an appeal. (*Id.*).

On January 25, 2010, Plaintiff protectively filed an application for SSI, alleging that he became disabled on November 26, 2004.[2] (Tr. 71, 110-113, 130). Plaintiff's application was denied at the initial level, and he requested a hearing before an ALJ on May 24, 2010. (Tr. 78-80, 105). A hearing was held on June 1, 2011,[3] and on August 11, 2011, the ALJ issued a decision denying Plaintiff's application for SSI. (Tr. 12-19, 24-47). Plaintiff requested review of the ALJ's decision on September 16, 2011, and on February 13, 2013, Plaintiff's attorney withdrew her representation. (Tr. 6-8). The Appeals Council denied Plaintiff's request for review on June 17, 2013. (Tr. 1). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review. In this memorandum opinion, the court reviews the ALJ's August 11, 2011 decision denying Plaintiff benefits.

At the time of the hearing, Plaintiff was fifty years old and had a tenth-grade education. (Tr. 28). Plaintiff has specialized occupational training as it pertains to welding. (Tr. 28, 136). He reported a heart condition, diabetes, a left hip injury, and high blood pressure as limiting his ability to work. (Tr. 135). He further alleged shortness of breath, chest pain, numbness in his extremities, dizziness, loss of balance, and eye problems during his hearing with the ALJ. (Tr. 29-32).

---

[2] At the hearing before the ALJ, Plaintiff's onset date of disability was amended to January 17, 2008. (Tr. 121).

[3] During Plaintiff's hearing, he was represented by attorney J. Stuart McAtee. (Tr. 24).

With regard to his domestic life, Plaintiff reported the following when asked what he did all day: "Well, basically set and watch television. I will get up. I walk outside, set around outside, stuff like that." (Tr. 38). Plaintiff explained to the ALJ that he is able to operate a motor vehicle and that he still has contact with friends and associates. (Tr. 38). He lives in a house with his mother and occasionally helps with household chores, but spends the majority of his day sitting and watching television; he does no other work. (Tr. 578).

Plaintiff further reported that he has been arrested on separate occasions in recent years. In 2010, he was arrested for possession of a controlled substance, and in 2011 for harassment, menacing, disorderly conduct, resisting arrest, and attempting to elude. (Tr. 39). Plaintiff claims that he was in possession of the controlled substance because his friend had asked him to try some of it "because he seen how much pain I was in so I tried some of it, tried to relieve my pain, so it was personal." (Tr. 41). As to the harassment, menacing, and disorderly conduct charges, Plaintiff states that those charges stemmed from a misunderstanding with a neighbor. (*Id.*). At the time of the hearing, Plaintiff was out on bond for the disorderly conduct charges. (*Id.*). The ALJ asked Plaintiff if it would be "safe in saying you're a little more active than you originally testified you were," to which Plaintiff responded, "I might be active . . . I have to get up and move around and try to do what I can do." (Tr. 41).

Plaintiff has performed past relevant work as a material handler, a tack welder, a construction worker II, a poultry processor, and as an assembly line worker. (Tr. 35). Plaintiff reported that he spent most of his life employed as a welder, but stated that he performed substantial construction work as well. (Tr. 34-35). Plaintiff's work activities while employed as a construction worker and welder required him to "bend, stand, climb ladders, [or] anything like that." (Tr. 35). While working as a tack welder during the 15 years prior to his alleged disability

3

onset date, he was routinely required to lift and move around metal, with 100 pounds being the most weight lifted by Plaintiff at any given time.[4] (Tr. 137). Plaintiff claims that he stopped working because of a heart condition, diabetes, a left hip injury, and high blood pressure. (Tr. 135). Specifically, Plaintiff reports that, "I'm in constant[] pain, 24/7. I'm in constant[] pain." (Tr. 35).

During his alleged period of disability, Plaintiff was seen by a host of different physicians. (Tr. 551, 577-79, 591, 638, 667). Medical records from Huntsville Hospital reveal that Plaintiff was treated for chest pain on December 29, 2008. (Tr. 550). Huntsville's medical records indicate that Plaintiff had previously been diagnosed with "hypertension, diabetes, dyslipidemia, untreated, and coronary artery disease," however, upon examination Plaintiff's cardiac exam demonstrated normal cardiac rate and rhythm, with "no murmurs or rubs." (Tr. 551). The physicians noted that Plaintiff had no edema and that his neurologic exam was intact. (*Id.*). Medical records from Huntsville describe Plaintiff as "a healthy appearing 48-year-old gentleman in no acute distress." (*Id.*). Plaintiff was diagnosed with chest pain syndrome, coronary artery disease, hypertension, diabetes, untreated dyslipidemia, chronic tobacco abuse, and a history of medical noncompliance. (*Id.*).

After receiving treatment at Huntsville Hospital, Plaintiff was referred to Dr. Marlin Gill, a state-hired consultative examiner, for a disability examination. (Tr. 578-80). In his evaluation, Dr. Gill noted that Plaintiff reported that he was unable to work because "[h]e slipped at home about a year ago . . . says his legs came out from under him and he landed on his buttocks . . . [and] has been having back pain ever since." (Tr. 578). Dr. Gill found Plaintiff capable of sitting with no limitations and described him as "alert and oriented . . . . Speech is clear and understandable, and he engages in normal conversation." (Tr. 579). Dr. Gill reported that

---

[4] Plaintiff reported that he frequently carried up to 55 pounds while employed as a tack welder. (Tr. 138).

4

Plaintiff walked with a slight limp on the left leg, but did not require an assistive device. (*Id.*). Plaintiff's upper extremities were noted to be normal and symmetrical; "[h]e uses the hands and arms normally with no limitations and demonstrates full range of motion in joints." (*Id.*). Plaintiff's upper extremities were further described as "neurovascularly intact," having muscle strength of "5/5." (Tr. 579). Plaintiff's back was described as looking normal, with no tenderness or palpable abnormality. (*Id.*). Plaintiff had the ability to bend forward sixty degrees, demonstrated good muscle tone in his legs, and was able to lift his legs (although he did complain of pain while lifting his left leg). (*Id.*). Dr. Gill reported that Plaintiff's joints in his lower extremities also exhibited a "good range of motion" and that, "he can squat down one-half way and come back up again." (*Id.*). Nonetheless, Dr. Gill diagnosed Plaintiff with lower back pain, coronary artery disease, and diabetes. (Tr. 580). Dr. Gill concluded his evaluation of Plaintiff by stating that, "The medical record of evidence provided by the DDS was reviewed and those findings were considered in the overall assessment of the patient." (*Id.*).

Plaintiff was seen by Physicians at Athens Family Care on January 14, 2010. (Tr. 590). Plaintiff's respiratory functions were described as normal "with no distress; normal breath sounds with no rales, rhonchi, wheezes or rubs." (Tr. 591). His cardiovascular functions were described as normal. (*Id.*). (Plaintiff had "normal S1 and S2 heart sounds with no S3, S4, rubs, or clicks."). Plaintiff's musculoskeletal system examination presented no evidence of ischemia or infection and revealed a normal gait; however, "spasms [were] noted in lumbar paraspinals" and a small mass (2 cm in diameter) was noted on the left of the lumbar spine. (*Id.*). Athens Family Care diagnosed Plaintiff with lower back pain, leg pain, shoulder pain and Type II diabetes, and Plaintiff was prescribed insulin (for his diabetic condition), Lortab (for pain) and Robaxin (for muscle spasms). (*Id.*).

Huntsville Hospital again treated Plaintiff on March 6, 2010. (Tr. 577). During his March visit to Huntsville Hospital, treating physicians at Huntsville administered a cardiology stress test. (*Id.*). The lab results from Plaintiff's stress test revealed a normal resting EGG. (*Id.*). Furthermore, Huntsville administered an EKG which was negative for ischemia and Plaintiff's LV systolic function was reportedly normal. (*Id.*).

In March 2011, Athens Limestone Hospital performed a CT scan of Plaintiff's cervical spine which revealed "no acute findings." (Tr. 640). However, the CT scan did reveal "discogenic degenerative change with small anterior and posterior osteophytes throughout." (*Id.*). In April 2011, Heart Center, Inc. examined Plaintiff in regards to his complaints of left arm and hand numbness, as well as neck pain. (Tr. 638). That medical group reported that Plaintiff complained that his legs only hurt while sleeping, not while he was awake during the day, and that Plaintiff's lower back and legs occasionally experienced a burning sensation when he walked. (*Id.*). In May 2011, Athens Limestone Hospital completed a lumbar spine radiology report, which revealed lower lumbar degenerative changes. (Tr. 637).

Toward the end of Plaintiff's hearing, the ALJ posed hypothetical questions to the Vocational Expert ("VE"). (Tr. 45-47). The ALJ, reiterating exertional capabilities discussed during Plaintiff's first hearing, asked the following vocational hypothetical:

> [A]t the previous hearing, the exertional capabilities were for light work with the following restrictions: Should not climb ladders, ropes or scaffolding, must avoid concentrated exposure to temperature extremes and cannot work with exposure to hazards such as dangerous moving machinery and unprotected heights and, as a result of that, you gave, you indicated, that that would not be inconsistent with past work as a production line worker. Would that still be correct or --

(Tr. 46). The VE responded to the ALJ's question by stating, "Yes, sir. It would still be correct." (Tr. 46). The ALJ posited a second question to the VE asking, "[a]nd if, for some reason, the individual would not be able to perform that, would there be any alternative work

available?" (*Id.*). The VE responded that, "[t]here are other jobs within these limitations and these are going to be . . . light. These would be unskilled jobs."[5] (*Id.*). Finally, the ALJ asked, "if the individual's testimony with regards to his restrictions and limitations that he testified to are credible, what affect would that have on those jobs that you identified, including past relevant work?" (Tr. 46). In response, the VE stated that, "I would say that would eliminate all jobs, past work, job examples I gave and all other jobs." (Tr. 47).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ found that there exists a significant quantity of jobs in the national economy that Plaintiff could perform (in conformity with the Medical-Vocational Guidelines provided at 20 C.F.R. § 404, Subpart P, Appendix 2) and that, therefore, Plaintiff is not disabled. (Tr. 19).

## II.     ALJ DECISION

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether

---

[5] "Some representative examples of these types of jobs are going to be jobs such as an inspector. This is inspecting plastic parts . . . . There are approximately 900 of these jobs in the state and 49,000 nationally at the light level." (Tr. 46). Further, the VE stated that there "would be jobs as a bench assembler . . . .[A]pproximately 2,400 of these jobs exist in the state and 128,000 in the national economy." (*Id.*). Lastly, the VE explained that there were representative jobs as a "sorter" with "approximately 500 of these jobs . . . in the state and 30,000 nationally." (*Id.*).

the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has a combination of severe impairments of diabetes, hypertension, degenerative disease at multiple levels in the cervical spine, a history of coronary artery bypass and congestive heart failure (all stable now), and a history of ulcers and gastroesophageal reflux disease ("GERD"), and that those satisfy the second prong of the analysis, as set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 14). However, with regard to the third prong, the

ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 and discussed Plaintiff's impairments. (Tr. 14-15). The ALJ found that all of these impairments, individually or in combination, are insufficient to qualify Plaintiff for disability. (Tr. 14-19).

First, the ALJ concluded that while the evidence does indicate that Plaintiff suffers from cardiovascular problems, "records show his heart problem stabilized and continuing limitations have not been evidenced." (Tr. 17). Second, as it relates to Plaintiff's diabetes, his "blood sugar levels are controlled with medication and significant problems related to his diabetes have not been evidenced." (Tr. 18). Next, the ALJ stated that objective findings are supportive of Plaintiff's reported spinal pain; however, the findings are "inconsistent with the limitations he alleges." (*Id.*). Regarding Plaintiff's medical conditions, the ALJ concluded by stating, "While, [Plaintiff] has a history of numerous impairments, which could result in disabling limitations, objective findings are inconsistent with significant limitations." (*Id.*).

The ALJ also considered Plaintiff's then recent arrests in making his determination that Plaintiff is not disabled. (Tr. 18). The ALJ explained that "[Plaintiff]'s recent court and arrest records also appear to be inconsistent with the significant degree of impairment alleged by [Plaintiff]" because court records indicate "arrests and charges of resisting arrest, attempting to elude, possession of controlled substances, burglary first degree, harassment, menacing, and disorderly conduct and attempts by [Plaintiff] to explain these charges were less than credible." (*Id.*). The ALJ noted that the charges and arrests do not support the allegations of limitations Plaintiff reported during his hearing. (*Id.*). Finally, the ALJ stated that "[Plaintiff] reported a level of activities to Dr. Gill that are inconsistent with his current arrest record;" therefore, "[Plaintiff] was and is less than candid in revealing his actual level of activities." (*Id.*).

9

In the final steps of the analysis, the ALJ found that Plaintiff is capable of performing past relevant work as a production line worker; this work does not require performance of work related activities which are precluded by Plaintiff's RFC. (Tr. 18). Based on the three hypothetical questions posed to the VE, the ALJ determined that, taking into account Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing light work that exists in significant numbers in the national economy, and found Plaintiff "not disabled." (Tr. 18-19).

## III.  PLAINTIFF'S ARGUMENTS FOR REVERSAL

Plaintiff failed to submit a brief in support of his contention that his claim for SSI was incorrectly denied. Thus, Plaintiff does not present a single argument for reversal. Therefore, because Plaintiff points to no errors within the ALJ's decision, this court will undertake to determine whether substantial evidence supports the ALJ's decision and whether correct legal standards were applied in reaching that decision.[6]

## IV.  STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the

---

[6] *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982).

decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. DISCUSSION

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied proper legal standards in reaching that decision.

### A. Substantial Evidence Supports the ALJ's Determination That Plaintiff is Not Disabled and the Correct Legal Standards Were Applied

Plaintiff bears the burden of proving that he is disabled within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Plaintiff's testimony and subjective complaints alone cannot establish disability status; the record must include signs and findings which evidence the existence of a medical impairment, that when considered with all other evidence as a whole, would lead to the conclusion that Plaintiff is disabled. *See* 42 U.S.C. § 423(d)(5)(A); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). It is not the duty of the court to argue Plaintiff's case or otherwise act as his counsel; therefore, because Plaintiff alleged

no specific error with the ALJ's decision, this court will only ensure that substantial evidence supports, and that proper legal standards were applied in reaching, the ALJ's decision. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006) (noting claimant waived issue because he did not elaborate on the claim or provide citation to authority regarding the claim); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). The ALJ's five-step disability determination under the Act will be examined for substantial evidence and correct legal standards below. *See* 20 C.F.R. § 404.1520.

> 1. **Step One: Substantial Gainful Activity**

Plaintiff has not engaged in substantial gainful activity since January 17, 2008, his amended alleged onset date of disability. (Tr. 26). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that a claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). However, if the ALJ finds that a claimant has not engaged in substantial gainful activity (as he did in the instant case), then the analysis proceeds to Step Two. Plaintiff testified that he has not participated in physical or mental activities for pay or profit since his alleged disability onset date. (Tr. 26, 130). Therefore, the ALJ did not err in his determination that Plaintiff has not engaged in substantial gainful activity since his amended alleged onset date of disability, and thus the analysis proceeds to Step Two.[7] (Tr. 26, 130).

---

[7] Plaintiff, in his disability report, avers that his alleged onset date was November 26, 2004. (Tr. 130).

### 2. Step Two: Severe Impairments

At Step Two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 416.920(c). An impairment is "severe" within the meaning of the Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). After taking into consideration the medical records of evidence, the ALJ determined that Plaintiff had the severe impairments of diabetes, hypertension, degenerative disease at multiple levels in the cervical spine, a history of coronary artery bypass and congestive heart failure (all stable now), and a history of ulcers and gastroesophageal reflux disease ("GERD"). (Tr. 14). The "severe" impairments found by the ALJ closely mirror Plaintiff's chief complaints found in his disability report, which indicates that Plaintiff is claiming disability due to a heart condition, diabetes, hypertension, and a left hip/spinal injury. (Tr. 135). Because Plaintiff was found to have a combination of severe impairments, the ALJ's analysis correctly proceeded to Step Three. *See* 20 C.F.R. § 416.921.

### 3. Step Three: Combination of Impairments

At Step Three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement, then the claimant is disabled. 20 C.F.R. § 416.909. If the listing and duration requirements are not met, the analysis will proceed to Step Four. *Id.* The ALJ found Plaintiff's cardiac problems, diabetes, hypertension, degenerative disease of the cervical spine, ulcers and GERD to be "severe" in combination within the meaning of the Regulations, but not "severe"

enough to meet or medically equal, either singularly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 14-15). Moreover, Plaintiff did not allege that he met or medically equaled an impairment or combination of impairments that would render him disabled per Appendix 1, Subpart P. The ALJ acted properly when deciding that Plaintiff did not meet a listing that would render him disabled at Step Three. Therefore, the ALJ correctly proceeded to Step Four.

    **4.    Step Four: Residual Functioning Capacity ("RFC") Determination**

The ALJ must determine at Step Four whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years (or 15 years prior to the date that a disability claim is filed). (*Id.*). In addition, the work must have lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 416.960(b), 416.965. If the claimant is found to have the RFC to do his past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the Fifth Step. *Id.*

Here at Step Four, the ALJ found that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. [§] 416.967(b), but cannot climb ladders, ropes or scaffolding. He must avoid concentrated exposure to temperature extremes and cannot work in areas with exposure to hazards, such as work around dangerous, moving machinery or work at unprotected heights." (Tr. 15). In making his RFC determination, the ALJ considered all symptoms "and the extent to which these systems can reasonably be accepted as consistent with the objective medical and other evidence, based on the requirements of 20 C.F.R. [§] 416.929 and SSRs 96-4p and 96-7p."

(Tr. 15). The ALJ also considered opinion evidence in accordance with 20 C.F.R. § 416.927. (*Id.*).

In reaching his RFC determination, the ALJ properly utilized a two-step process in which it was first determined whether there was an underlying medically determinable physical or mental impairment (*i.e.*, an impairment that can be shown by medically acceptable clinical and laboratory diagnostic techniques) that could have reasonably been expected to produce Plaintiff's pain or other symptoms. (Tr. 15). Second, once an underlying physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms was evidenced, the ALJ was required to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functioning.[8]

The ALJ first had to determine whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's pain or other symptoms. At Plaintiff's hearing, he reported pain while walking and standing, and indicated his pain became worse at nighttime. (Tr. 31, 36). Plaintiff provided medical evidence indicating that he has hypertension; however, he reports to take medication to control his hypertension. (Tr. 32, 580). Plaintiff also reported, and medical evidence supports, the fact that he is diabetic. (Tr. 34, 580). Plaintiff alleges that he does not have his diabetes "under control" and that he still has "complication[s] with it." (Tr. 34). He also reports that he is unable to stand for more than 15-20 minutes because he loses "circulation in his legs and spine." (Tr. 31). The ALJ acknowledged Plaintiff's history of cardiovascular troubles (Tr. 15, 31, 551, 580), but also noted that in 2008 Plaintiff's cardiac examination was deemed "normal" and in 2010 Plaintiff's

[8] For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("the district court must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record").

lab results demonstrated a normal resting EGG and an EKG which was negative for ischemia. (Tr. 551, 577). The ALJ concluded the first step of his analysis by stating that "[a]fter careful consideration of the evidence ... [I] find[] that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent" they are not consistent with the RFC.  (Tr. 16).

At the second step of this two-step process, the ALJ was required to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit his functioning.  The ALJ explained that medical records of evidence demonstrate that Plaintiff's heart problems have stabilized and "continuing limitations have not been found." (Tr. 17, 577).  With respect to Plaintiff's diabetes, the ALJ found that Plaintiff's blood sugar levels are controlled with medication and no significant problems related to his diabetic condition have been evidenced.  (Tr. 18, 578, 580, 591).  The ALJ went on to explain that objective findings are supportive of Plaintiff's spinal pain; however, the findings are inconsistent with the degree of pain and limitation alleged.  (Tr. 18, 579, 638, 640-41, 710). Concluding his examination of the medical evidence of record, the ALJ stated that, while Plaintiff "has a history of numerous impairments, which could result in disabling limitations, objective findings are inconsistent with significant limitations."  (Tr. 18).  Upon examination of the record as a whole, the ALJ found that even considering the combined effects of Plaintiff's impairments with resulting limitations, Plaintiff retains the ability to perform "a reduced range of work at the light level of exertion" with the limitations added specific to Plaintiff's medical condition.  (Tr. 18).

In addition to objective medical findings that did not demonstrate the degree of limitation alleged by Plaintiff, the ALJ noted that "[Plaintiff]'s recent court and arrests records also appear to be inconsistent with the significant degree of impairment alleged by [Plaintiff]." (Tr. 18, 122-25). Court records indicate arrests and charges of resisting arrest, attempting to elude, possession of controlled substances, burglary first degree, harassment, menacing, and disorderly conduct. (Tr. 122-25). The ALJ stated in his decision that "attempts by [Plaintiff] to explain these charges were less than credible" and "the charges and arrests do not support the allegations of limitations he reported during the hearing." (Tr. 18). Indeed, the transcript from the hearing reveals that Plaintiff was less than credible in discussing his criminal activities since the time of his prior disability hearing. (Tr. 38-44). The ALJ correctly found that Plaintiff's arrest record was inconsistent with the level of inactivity that Plaintiff reported to Dr. Gill during his consultative examination.[9] (Tr. 18, 122-25, 578). For reasons stated above, this court finds that the ALJ's determination at Step Four was proper, and therefore the analysis turns to the fifth and final step of the ALJ's decision-making process.

### 5. Step Five: Other Work

At the final step, the ALJ must decide whether a claimant is able to do any other work considering his RFC, age, education, and other work experience. 20 C.F.R. § 404.1520(g). If a claimant is able to do other work, he is not disabled. *Id.* On the other hand, if a claimant is not able to do other work and meets the duration requirement, he is disabled. *Id.* In order to support a finding of "not disabled" at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the

---

[9] Plaintiff reported to Dr. Gill that he "has constant aching and pain in the lumbar area and finds it difficult to get comfortable in any position. It becomes severe with activity such as standing, walking, and bending." (Tr. 578). Plaintiff further reported to Dr. Gill that he could sit with no limitations, but can only "stand for a maximum of ten minutes and walk a maximum of one block." (*Id.*).

national economy that a claimant can perform, given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In order to meet the Administration's burden of providing evidence that demonstrates that work exists in significant numbers in the national economy that a claimant can perform despite his RFC, age, education, and work experience, the ALJ may (as he did here) employ the testimony of a vocational expert ("VE"). An ALJ may make the determination of whether a claimant is capable of performing other jobs by soliciting testimony from a VE who is asked to consider a hypothetical individual with the same limitations as the claimant. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Expert vocational testimony, in response to a hypothetical question accurately reflecting a claimant's RFC, provides substantial evidence to support a finding that a claimant is capable of performing a significant number of jobs in the national economy. *See Phillips*, 357 F.3d at 1240.

Here, the ALJ solicited evidence from the VE which supported the conclusion that Plaintiff is not disabled. (Tr. 45-47). The VE testified that Plaintiff has past relevant work as a material handler, a tack welder, a construction worker II, a poultry processor, and a production line worker. (*Id.*). The ALJ determined that Plaintiff is capable of performing his past relevant work as a production line worker, a job classified as light and unskilled, as actually and generally performed. (Tr. 18). The VE testified that Plaintiff is capable of performing a significant number of "light and unskilled" jobs in the national economy; specifically, the VE testified that there were a significant number of jobs as an inspector,[10] a bench assembler,[11] and a sorter.[12]

---

[10] The VE testified that there were 900 inspector jobs available in the state of Alabama and 49,000 nationally.

[11] The VE testified that there were 2,400 bench assembler jobs available in the state of Alabama and 128,000 nationally.

[12] The VE testified that there were 500 sorter jobs available in the state of Alabama and 30,000 nationally.

Therefore, because the VE testified that Plaintiff is capable of returning to his past relevant work (albeit, with limitations) and that there are a significant numbers of jobs present in the national economy that Plaintiff is capable of performing given his RFC, and because Plaintiff failed to meet his burden of proving he could not perform his past relevant work or the other jobs identified by the ALJ, this court finds that substantial evidence supports the ALJ's findings and his conclusion that Plaintiff is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(a)(4)(v), 404.1520(g), 404.1560(c); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). In addition, the ALJ correctly applied the law in making these findings and conclusions.

## VI. CONCLUSION

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied in reaching this determination. In concluding that Plaintiff was not disabled within the meaning of the Act, the court notes that Plaintiff did not file a brief or present any arguments supporting his assertion that the ALJ erred in his disability determination. It is not the duty of the court to argue Plaintiff's case or otherwise act as his counsel. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 (11th Cir. 2006). The evidence of record demonstrates that the ALJ properly considered relevant evidence and properly performed his duty as the trier of fact in resolving any conflicts within the evidence. (Tr. 9-23). The ALJ's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 29, 2014.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE